### WHITESTONE v. AMERICAN INS. UNION.

(Circuit Court of Appeals, Third Circuit. February 22, 1906.)

No. 63.

INSURANCE—MUTUAL BENEFIT INSURANCE—AGENTS—COMPENSATION—CONSTRUCTION OF CONTRACT.

A contract by which plaintiff, an insurance order, employed defendant to solicit applications for membership, provided that he should receive in payment for his services a certain sum for each member obtained by him and half of the first six assessments paid by such members. Also that plaintiff should advance to defendant a certain sum semimonthly, and that "against such advance all equities in the business shall be retained by the said first party (plaintiff) until the same shall exceed the advance, whereupon the difference shall be paid * * * to said second party." At the date of a settlement between the parties, the amount of the advances made exceeded the sums received by plaintiff, which were applicable thereon, and defendant gave a note for the difference, on which suit was brought. *Held*, that the contract did not mean that the advances made were to be repaid only by such "equities" as should come into the hands of plaintiff, and that the court properly refused to charge the jury that the note was without consideration.

In Error to the Circuit Court of the United States for the Western District of Pennsylvania.

W. K. Jennings, for plaintiff in error.
James C. Gray, for defendant in error.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

GRAY, Circuit Judge. In the court below, the defendant in error was plaintiff, and the plaintiff in error was defendant, and we will speak of them here as plaintiff and defendant respectively.

The cause of action, as set forth in the statement of claim, was:

(1) A promissory note, dated March 8th, 1901, made by the defendant to the order of the plaintiff, for $1,787.30, payable one year after date;

(2) An indebtedness of $618.19, arising from the defendant's having, on June 15th, 1901, overdrawn his account with the plaintiff, to the aggregate of $618.19, "said sum being in addition to and in excess of

his remuneration, as provided by and under the terms" of a certain contract, marked "Exhibit B";

(3) An indebtedness accruing between the 15th day of June, 1901, and the 15th day of June, 1902, by virtue of a certain contract made and executed between said plaintiff and said defendant, on the 15th day of June, 1901, a copy of which is marked "Exhibit C."

At the trial, the indebtedness, on account of the overdraft of $185.11, was not contested, and the court ruled out the overdraft of $618.19, leaving only the question of the indebtedness on account of the promissory note of $1,787.30, which the court submitted to the jury. The verdict was in favor of the plaintiff, as to the amount of this note, with interest, and from the judgment thereon, this writ of error was sued out by the defendant.

At the trial, the making of the note was proved by the testimony of the defendant himself. The defense set up was want of consideration, which the defendant sought to establish by exhibiting a certain contract between the plaintiff and defendant, the stipulations of which, as he contends, disprove the indebtedness upon which the note was said to be predicated. This contract is attached to the statement of claim, and is called "Exhibit B." It purports to be an agreement, made on the first day of August, 1899, between the plaintiff, a corporation organized under the laws of the state of Ohio, and the defendant, a citizen of the state of Pennsylvania. It recites that the plaintiff, in said contract, employs the defendant to solicit applications for membership in the plaintiff corporation, in the state of Pennsylvania, giving him the official title of State Deputy in and for the said state of Pennsylvania, and providing that he shall have control of all deputies in the state, except as therein provided. The stipulation with which we are here concerned, is as follows:

"In full payment for such work done and services performed, the first party will pay the second party as follows: First, the National fees of $1.50 which shall be collected by the said second party and his Deputies, and retained by the second party; Second, in addition thereto $2.00 for each and every approved member; Third, 50 per cent. of the first six Assessments collected on all approved members which shall have been secured by said second party and his Deputies or shall within a period of one year from date of institution, join a Chapter instituted under the direction of said second party; Fourth, that upon the above contract there shall be an advance made of $150 per month, $75 of which shall be paid upon the 15th and $75 upon the 31st, in accordance with the usual plan in issuing warrants by said first party. Against such advance, all equities in the business shall be retained by the said first party until the same shall exceed the advance whereupon the difference shall be paid in bimonthly installments as above provided, to said second party."

It is undisputed, that the promissory note in question was given for what is called an overdraft by the said defendant, consisting of advances to said defendant as provided for in the contract, as agent of the plaintiff, over and above the amounts due him from said plaintiff. The defendant contends that, as the "equities" mentioned in said contract, to be retained by the plaintiff, were shown to be remittances directly to the plaintiff, made by various Lodges or Chapters organized by the defendant, the advances to the defendant provided for in said contract, were only to be repaid in that manner; that there was, there-

fore, no personal indebtedness created by such advances, and the promissory note, given for the difference between such advances and the so-called "equities" collected by the plaintiff, was without consideration. The defendant also testified that the note was given merely as an accommodation to the Insurance Company, in order to place its affairs in proper shape before the Insurance Commissioner of the state of Ohio, and that the agent of the plaintiff, who obtained the note from the defendant, did so with the express understanding that there was no real indebtedness, and that the balance it represented would be taken care of by credits hereafter due to defendant. These allegations of the defendant are denied by the president and other officers of the plaintiff company, who assert that the note was given in March, for the amount admitted by defendant to be due on a settlement up to the previous January.

The real and only question presented for our determination, is, whether the court should have so construed this contract, as to find that the promissory note in question was without consideration, and therefore have given to the jury peremptory instructions to find for the defendant. It must be admitted that the language of the stipulation, in regard to the retention of "equities" by plaintiff against the advances made, is not as clear as it ought to be, but with such explanation as has been given, of what was meant by "equities," we are of opinion that the contract between plaintiff and defendant does not mean that the advances made are to be repaid only by such "equities" as may come to the hands of the plaintiff, and that no indebtedness is otherwise created on the part of the defendant, by such advances. The contract does not say in so many words, as does the second contract between the same parties, made June 15th, 1901, that if such "equities" failed to reimburse the plaintiff for such advances, then the defendant shall make good any shortage by payment in cash; but we do not think we are justified in presuming that the absence of such express language, means that no individual indebtedness for the difference between "equities" and advances can be imposed by the contract in question. We think, on the other hand, that, if the contract meant what defendant contends that its meaning is, viz., that the advances made were to be repaid in no other way than by these so-called "equities," it should have said so in plain and unequivocal language. The learned judge of the court below, however, without attempting to give to the jury an authoritative interpretation of this written contract, as bearing upon the question of consideration, submitted the whole case to the jury on the evidence, accompanied by a charge, to which the defendant can have no ground for exception, and none was taken thereto.

The three assignments of error, which we find in the record, are for refusing certain prayers for instructions, all of which, if granted, would have made it necessary for the court to give peremptory instructions to the jury to find for the defendant. This, we think the court below was right in refusing to do.

The judgment of the court below should be affirmed, and it is so ordered.